

NUMBER 13-18-00316-CV

# COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

LYNANN GRUMBLES,                                                      Appellant,

v.

INEOS USA, LLC, INEOS
NITRILES, USA, LLC, A
DIVISION OF INEOS USA,
LLC, AND ARTURO XAVIER
TRUJILLO,                                                            Appellees.

On appeal from the County Court at Law No. 1
of Calhoun County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Justice Longoria**

A jury found that there was no common-law marriage between James Wade

Gutierrez, deceased, and appellant Lynann Grumbles.  By three issues which we

construe as one, Grumbles argues that the jury charge instruction was misleading and served as an improper comment on the weight of the evidence. We affirm.

## I. BACKGROUND

On June 10, 2015, Gutierrez died while working for Zachry Industrial Services, Inc. (Zachry) at Ineos's acrylonitrile plant in Port Lavaca, Calhoun County. Grumbles intervened in the present case, which was initiated by Karen Henderson and Miguel Gutierrez, Gutierrez's mother and father. The suit alleged that Ineos USA, LLC, Ineos Nitriles, USA, LLC, a division of Ineos USA, LLC, and Arturo Trujillo (collectively, the appellees) caused the death of Gutierrez through their negligence; Grumbles intervened, alleging she was Gutierrez's common-law spouse. Karen and Miguel eventually nonsuited their claims against the appellees, leaving Grumbles as the sole plaintiff. The trial court granted the appellees' motion for bifurcation; thus, before reaching liability and damages, the case proceeded on the threshold issue of whether Grumbles was Gutierrez's common-law spouse and thereby had standing to bring suit.

On March 16, 2018, before trial began, Grumbles and the appellees submitted an agreed instruction on common-law marriage: "Two people are married if they agreed to be married and after the agreement they lived together in Texas as spouses and there represented to others that they were married." This language tracks the statute on informal marriage, as well as the applicable Texas Pattern Jury Charge. *See* TEX. FAM. CODE ANN. § 2.401(a); TEX. PATTERN JURY CHARGES: FAMILY & PROBATE § 201.4A (2016 ed.). Trial began on March 26, 2018. Grumbles's mother, Maxine Grumbles, testified that Gutierrez and Grumbles met in the fall of 2012 at a community college. Maxine testified that in November of 2013, Gutierrez and Grumbles moved into an apartment

2

together, where they continued cohabiting until Gutierrez's death in June of 2015. Even though Grumbles could not recall a specific date, she testified that she and Gutierrez agreed to be common-law married sometime in April of 2014.

One of Gutierrez's coworkers testified that he believed Gutierrez and Grumbles acted like a married couple, at times. However, he also testified that, to his knowledge, they were just boyfriend and girlfriend. Grumbles's friend Daren Galup testified that both Grumbles and Gutierrez told her that they were common-law married. Grumbles did not call her father, Johnny Grumbles, to testify at trial because she "did not have the best relationship" with him; however, Johnny's video deposition testimony was entered into evidence at trial. Johnny averred that Grumbles told him that she and Gutierrez were common-law married around June of 2014. However, Grumbles herself admitted at trial that she only specifically told two individuals about her common-law marriage: her best friend Daren and her mother. Grumbles admitted that she did not even tell her brother, with whom she has a "close relationship," that she was common-law married to Gutierrez. Instead, her brother testified that it was Gutierrez that revealed to him that they were common-law married. Grumbles also testified that after she and Gutierrez agreed to be common-law married, they opened a joint checking account together and they renewed their lease together. Gutierrez and Grumbles never filed their taxes jointly as married; instead, they filed their taxes separately.

In November of 2014, approximately seven months after Gutierrez and Grumbles allegedly agreed to be common-law married, Gutierrez submitted an employee enrollment form to his employer, Zachry. He listed himself as "single" as opposed to "married" and

3

designated his mother, Karen, as his emergency contact and as the sole beneficiary of his life insurance.

Gutierrez's mother, father, and step-father all testified that they did not believe that Gutierrez and Grumbles were common-law married. Michael Boudreaux, a friend of Gutierrez's step-father, testified that he went on a hunting trip with Gutierrez in December of 2014; Boudreaux averred that Gutierrez told him on that trip that he did not want to marry Grumbles because he and Grumbles had been fighting a lot recently. Gutierrez's parents testified that Gutierrez also told them that he did not want to marry Grumbles due to ongoing conflict in their relationship. Several of Gutierrez's close friends and coworkers agreed that even though Gutierrez and Grumbles were open about their love for each other, Gutierrez never mentioned being married. None of Gutierrez's friends or coworkers thought he was married.

Gutierrez's parents additionally testified that Grumbles was present at the funeral home when funeral arrangements were being made. According to Gutierrez's parents, they told the funeral director to list Grumbles as Gutierrez's fiancée in his obituary, to which Grumbles allegedly responded, "I tried every way I could for three years to get him to marry me, and he wouldn't. So don't put me as fiancé[e]. Just put me as 'girlfriend.'" The funeral home director also collected information from Grumbles and Gutierrez's parents to prepare the official death certificate, which listed Gutierrez as "never married." Grumbles's Facebook page indicated that she was "in a relationship" rather than "married."

As the jury charge was being prepared, the appellees requested the following additional instruction be included in the jury charge:

4

> Isolated references to each other as husband and wife, without more, are insufficient to establish that [Gutierrez] and [Grumbles] each represented to others that they were married. Whether [Gutierrez] and [Grumbles] had a reputation in the community for being married to one another is a significant factor in your determination of whether [Gutierrez] and [Grumbles] each represented to others that they were married.

Grumbles objected to the proposed instruction, arguing that it was an inaccurate statement of the law and constituted an improper comment on the weight of the evidence. Grumbles then requested her own additional jury instructions:

> Representations to others may be established by conduct and actions.
>
> . . .
>
> Spoken words are not necessary to establish representation as husband and wife.
>
> . . .
>
> There is no requirement that anything be in writing to have a common law marriage.

The trial court rejected Grumbles's proposed instructions and included the appellees' proposed instruction in the jury charge. Grumbles again objected, and her objection was overruled. The jury returned a verdict in favor of the appellees, finding that Gutierrez and Grumbles were not common-law married. The trial court found that Grumbles did not have standing and rendered a judgment that she take nothing by way of her claims against appellees. This appeal followed.

## II. JURY CHARGE ERROR

In her sole issue, Grumbles asserts that the trial court abused its discretion because its instruction to the jury was misleading and improperly commented on the weight of the evidence.

## A. Standard of Review and Applicable Law

5

Generally, the trial court has considerable discretion in determining the proper jury instructions, and we will only reverse if the trial court abused its discretion. *See Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009); *Fluor Daniel, Inc. v. Boyd*, 941 S.W.2d 292, 295 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied). The trial court abuses its discretion if it acts arbitrarily or fails to follow guiding rules and principles. *See Hawley*, 284 S.W.3d at 856; *Fluor Daniel*, 941 S.W.2d at 295.

"The chief guiding principle the trial court should refer to when submitting instructions and definitions is Rule 277." *Fluor Daniel*, 941 S.W.2d at 295; *see* TEX. R. CIV. P. 277. According to Rule 277, the trial court should give "such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277. An instruction is proper if it "(1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Hawley*, 284 S.W.3d at 856; *see Ohrt v. Union Gas Corp.*, 398 S.W.3d 315, 338 (Tex. App.—Corpus Christi–Edinburg 2012, pet. denied). But if "a particular instruction would exaggerate, minimize, or withdraw from the jury's consideration some pertinent evidence," then such instruction is improper. *Ohrt*, 398 S.W.3d at 338; *see Schack v. Prop. Owners Ass'n of Sunset Bay*, 555 S.W.3d 339, 355 (Tex. App.—Corpus Christi–Edinburg 2018, pet. denied) (observing that a jury instruction is an improper comment on the weight of the evidence if it encourages the jury to give undue weight to certain evidence or if it assumes a disputed fact); *State v. Luby's Fuddruckers Rests., LLC*, 531 S.W.3d 810, 820 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.) (finding that an instruction improperly comments on the weight of the evidence when it encourages the jury to give undue weight to certain evidence or when it suggests the trial court's opinion concerning an issue).

6

Additionally, "not every correct statement of the law belongs in the jury charge." *Luby's Fuddruckers Rests.*, 531 S.W.3d at 820; *see Fluor Daniel*, 941 S.W.2d at 295 (observing that a jury charge instruction may be improper, even if it is an accurate statement of law, if it is "unnecessary to enable the jury to pass upon the issue in the case"). For this reason, the Supreme Court of Texas has generally advised that a jury charge for a statutory cause of action should track the statutory language as closely as possible. *See Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 601 (Tex. 2010) ("The language may be slightly altered to conform the issue to the evidence presented in the case, but a court should not burden a jury with surplus instructions." (internal citation omitted)); *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994) ("[A] jury charge should track the language of the provision as closely as possible."); *Acord v. Gen. Motors Corp.*, 669 S.W.2d 111, 116 (Tex. 1984) ("We explicitly approve the Pattern Jury Charges issue and instruction for design defect cases, and disapprove the addition of any other instructions in such cases, however correctly they may state the law under § 402A of the Restatement (Second) of Torts.").

Nevertheless, a trial court may "personalize or individualize the charge to the facts of the case so the jury can more easily understand the law." *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 220 (Tex. App.—Waco 1993, writ denied). Thus, our Court has held on multiple occasions that "[a]n explanatory instruction is improper only if it is a misstatement of the law as applicable to the facts." *Formosa Plastics Corp., USA v. Kajima Int'l, Inc.*, 216 S.W.3d 436, 482 (Tex. App.—Corpus Christi–Edinburg 2006, pet. denied); *Ed Rachal Found. v. D'Unger*, 117 S.W.3d 348, 364 (Tex. App.—Corpus Christi–Edinburg 2003), *rev'd on other grounds*, 207 S.W.3d 330

(Tex. 2006) (same); *DeLeon v. Pickens*, 933 S.W.2d 286, 292 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied) (same); *Wakefield v. Bevly*, 704 S.W.2d 339, 350 (Tex. App.—Corpus Christi–Edinburg 1985, no writ) ("It is the duty of the trial court to submit such explanatory instructions as are proper so as to enable the jury to render a verdict and to issue such instructions that apply the law to the facts, as shown by the evidence in *that trial*.").

## B. Analysis

Grumbles asserts that the additional language added to the jury charge instruction was misleading. The jury charge instruction, in its entirety, read as follows:

> Two people are married if they agreed to be married and after the agreement they lived together in Texas as spouses and there represented to others that they were married.
>
> Isolated references to each other as husband and wife, without more, are insufficient to establish that [Gutierrez] and [Grumbles] each represented to others that they were married. Whether [Gutierrez] and [Grumbles] had a reputation in the community for being married to one another is a significant factor in your determination of whether [Gutierrez] and [Grumbles] each represented to others that they were married.

The only question the jury was asked to answer was, "Were James Gutierrez and Lynann Grumbles married before James Gutierrez's death on June 10, 2015?" The jury returned an answer of "no." It is undisputed that the first paragraph accurately tracks the statute on informal marriage. *See* TEX. FAM. CODE ANN. § 2.401(a). However, Grumbles complains that the second paragraph is misleading and legally inaccurate because it strays from the Pattern Jury Charge and the informal marriage statute. *See id*.

We disagree that the second paragraph is legally inaccurate. The Supreme Court of Texas has declared that "there can be no secret common law marriage" and that, accordingly, "isolated references to a person being his or her husband or wife constitute[s]

8

no evidence of a common law marriage." *Ex parte Threet*, 333 S.W.2d 361, 364 (Tex. 1960); *see Nichols v. Lightle*, 153 S.W.3d 563, 571 (Tex. App.—Amarillo 2004, pet. denied) (finding that an isolated reference to being married is "not evidence of 'holding out' to others that a marriage exists"); *see also Matter of Estate of Sneed*, No. 11-16-00051-CV, 2018 WL 1772999, at *2 (Tex. App.—Eastland Apr. 12, 2018, pet. denied) (mem. op.) (same). Additionally, whether a couple held themselves out as husband and wife largely "turns on whether the couple had a reputation in the community for being married." *Estate of Durrill*, 570 S.W.3d 945, 960 (Tex. App.—Corpus Christi–Edinburg 2019, no pet.); *Smith v. Deneve*, 285 S.W.3d 904, 910 (Tex. App.—Dallas 2009, no pet.) ("[A] couple's reputation in the community as being married is a significant factor in determining the holding out element."). Thus, it is not legally inaccurate to say that isolated references to being married, without more, do not constitute evidence of common-law marriage and that having a reputation in the community as being married is a significant factor in determining whether a couple held themselves out as married. *See Ex parte Threet*, 333 S.W.2d at 364; *Estate of Durrill*, 570 S.W.3d at 960.

Given the facts presented during trial, we also conclude that the instruction was proper to assist the jury in understanding the law. *See U.S. Sporting Prods.*, 865 S.W.2d at 220. According to the evidence adduced at trial, Grumbles and Gutierrez only specifically told three individuals, all close to Grumbles, that they were common-law married: Grumbles's brother, Grumbles's mother, and Grumble's best friend. Grumble's father also claimed that he knew Grumbles was common-law married. Meanwhile, none of Gutierrez's family members, acquaintances, close friends, or coworkers believed that Gutierrez was married. Furthermore, the jury heard a significant amount of evidence

9

indicating that Gutierrez considered himself single and held himself out as single to the community. For example, Gutierrez and Grumbles filed their taxes independently instead of jointly; Gutierrez represented to his employer that he was single in November of 2014; Gutierrez designated his mother, not Grumbles, as the recipient of his life insurance policy; after they were already allegedly common-law married, Gutierrez told several friends and family members that he did not want to marry Grumbles; Grumbles's Facebook page indicated that she was "in a relationship" as opposed to "married"; and Grumbles, by her own request, was described as Gutierrez's "girlfriend" in his obituary. Otherwise, the record is generally devoid of any evidence indicating that Grumbles and Gutierrez had a reputation in the community for being married. Given these facts, the challenged instruction did not improperly nudge the jury in the appellees' favor or minimize the evidence that Grumbles relies upon. *See Ohrt*, 398 S.W.3d at 338; *see Luby's Fuddruckers Rests.*, 531 S.W.3d at 820. Likewise, the instruction did not indicate the trial court's opinion as to the "verity or accuracy of the facts in inquiry" or "assume[] a disputed fact in issue." *Schack*, 555 S.W.3d at 355.

Grumbles urges us to take inspiration from a very similar case out of the San Antonio Court of Appeals. *See Crenshaw v. Kennedy Wire Rope & Sling Co.*, 327 S.W.3d 216, 224 (Tex. App.—San Antonio 2010, pet. granted, judgm't vacated w.r.m.). In *Crenshaw*, the critical issue was whether a common-law marriage existed. The jury instruction stated:

> A man and a woman are married if they agreed to be married and after the agreement they lived together in Texas as husband and wife and represented to others that they were married.
>
> Represented to others means that both Jamie Crenshaw and David Goehring represented to other people that they were married. Mere isolated

10

references to each other as husband and wife does not amount to adequate evidence to prove that they represented to others that they were married.

*Id.* at 220. The San Antonio Court of Appeals concluded that this was a comment on the weight of the evidence and nudged the jury in a specific direction. *Id.* at 224. The court reached that conclusion without determining "whether the challenged language was in fact a correct statement of the law." *Id.* n.2. However, as we discussed above, our Court has held on multiple occasions that "[a]n explanatory instruction is improper only if it is a misstatement of the law as applicable to the facts." *Formosa Plastics*, 216 S.W.3d at 482; *Ed Rachal*, 117 S.W.3d at 364; *DeLeon*, 933 S.W.2d at 292; *Wakefield*, 704 S.W.2d at 350. Therefore, even though the instruction strayed from the pattern jury charge, we conclude that the instruction did not improperly comment on the weight of evidence or mislead the jury because the instruction was an accurate statement of the law as applicable to the facts of the case. *See Formosa Plastics*, 216 S.W.3d at 482. Given the trial court's considerable discretion in this matter, we cannot conclude that the trial court abused its discretion in this scenario. *See Hawley*, 284 S.W.3d at 856; *Fluor Daniel*, 941 S.W.2d at 295. We overrule Grumbles's sole issue.

### III. Conclusion

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Delivered and filed the
27th day of June, 2019.

11